**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LI CHING CHU, ROBERT CHING LIANG HUNG, individually and as successors-in-interest to CINDY K. HUNG (deceased),

Plaintiffs,

v.

TRIBAL TECHNOLOGIES, INCORPORATED, TRIBAL BRANDS, INCORPORATED, JEFF MARTIN, JOE VIERRA, and VICTORIA DINOVICH

Defendants.

No. C 12-05306 WHA

Related to

No. C 11-04990 WHA

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**

**INTRODUCTION**

In this action arising out of a death, defendants move to dismiss via three separate motions. To the extent stated below, the motions to dismiss are **GRANTED.** A separate motion to strike is **DENIED** as moot.

**STATEMENT**

Plaintiffs Li Ching Chu and Robert Ching Liang Hung are the surviving parents of Cindy K. Hung (Chu Decl. ¶ 1; Hung Decl. ¶ 1). Plaintiffs alleged that at all relevant times, defendants Tribal Technologies and Tribal Brands were Delaware corporations that qualified as "employers" under the California Fair Employment and Housing Act (Compl. ¶¶ 6–7). Defendant Jeff Martin was the Chief Executive Officer of both corporations (*id.* at ¶ 8). Defendant Joe Vierra was the Vice President of Tribal Technologies (*id.* at ¶ 9). Defendant

Victoria Dinovich was a software engineer for Tribal Technologies (*id*. at ¶ 10). Ms. Hung worked for both Tribal Technologies and Tribal Brands (together "Tribal") (*id*. at ¶ 14). On October 21, 2010, Ms. Hung's body was found on top of a breezeway at her office building (*ibid.*).

Despite having already filed an identical action in state court, plaintiffs filed a complaint in federal court in 2011 (Case No. 11-04990-WHA). The complaint alleged several state law claims, including wrongful death, against Tribal Technologies, Glenborough 400 ECR, LLC (the corporation that operated the office building), and 100 John Does working for Tribal. In January 2012, the complaint was dismissed for lack of subject-matter jurisdiction. Despite several hearings explaining the defect to counsel both before and after the January dismissal order (as well as possibly how it might be cured), plaintiffs failed to cure. Counsel filed two motions seeking leave to file a first amended complaint, but both were denied for failure to allege diversity jurisdiction properly. The complaint was dismissed without leave to amend and judgment was entered. Plaintiffs appealed (and that appeal is still pending).

On October 16, 2012, while the appeal was pending, plaintiffs commenced the instant, new action (Case No. 12-05306-WHA). The complaint is based on the same set of facts (Dkt. No. 1). The new action was reassigned to the undersigned judge (Dkt. No. 4, 19). Plaintiffs now allege four employment-related state law claims in their individual capacities and as successors-in-interest to Ms. Hung: (1) sexual harassment; (2) retaliation; (3) breach of contract; and (4) wrongful termination in violation of public policy. The first, second, and fourth claims derive from California's Fair Employment and Housing Act (Compl. ¶ 55). Plaintiffs do not specify the source of relief for the breach of contract, but this order will assume it to be a state law claim, to which California law applies.

**ANALYSIS**

1. **LEGAL STANDARD.**

To survive a FRCP 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, if accepted as true, states a claim for relief plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A facially plausible claim will specify sufficient factual

2

allegations from which reasonable inferences establishing the defendant's liability can be drawn. *Ibid.* While a court "must take all of the factual allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). This "plausibility standard" is not a probability requirement. *Ibid.* Still, "it asks more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Ibid.* (quoting *Twombly*, 550 U.S. at 557) (internal quotations marks omitted).

### 2. PLAINTIFFS MUST EXHAUST ADMINISTRATIVE REMEDIES BEFORE BRINGING SUIT.

Defendants contend that, even assuming plaintiffs can bring FEHA claims on Ms. Hung's behalf, the claims should be dismissed for failure to exhaust administrative remedies. This order agrees.

#### A.     FEHA Claims Survive The Decedent.

There is no controlling authority on whether FEHA claims survive a decedent who had yet to file an administrative claim with the Department of Fair and Equal Housing ("DFEH"). Other circuits, however, have applied state survivability statutes to determine whether various rights of action similar to FEHA survive the decedent. *See, e.g., Jenson v. Eveleth Taconite Co.*, 130 F.3d 1287, 1304 (8th Cir. 1997); *Slade for Estate of Slade v. U.S. Postal Serv.*, 952 F.2d 357, 360 (10th Cir. 1991). At least one court, applying California law, granted leave to allege a survivor FEHA claim. *Livingston v. Kemper Sports Mgmt., Inc.*, No. 12–01427, 2012 WL 5349174 (E.D. Cal. Oct. 26, 2012). In *Livingston*, the wife and children of a decedent employee sued the decedent's employer under FEHA. The court ruled that though the non-employee plaintiffs lacked standing to assert FEHA claims against the employer-defendants, they could file an amended complaint alleging a survivor action for the same claims. *Id.* at *5–7.

Applying California law, this order first finds that FEHA does not contain a survivability provision. Where there is no specific provision regarding survivability, a court should apply California's general survivability statute. "Except as otherwise provided by statute, a cause of

3

action for or against a person is not lost by reason of the person's death, but survives subject to the applicable limitations period." Cal. Civ. Proc. Code § 377.20(a).  Assuming that a FEHA claim survives under California's survivability statute, plaintiffs effectively step into Ms. Hung's shoes as her successors-in-interest.

> A cause of action that survives the death of the person entitled to commence an action or proceeding passes to the decedent's successor in interest, subject to Chapter 1 (commencing with Section 7000) of Part 1 of Division 7 of the Probate Code, and an action may be commenced by the decedent's personal representative or, if none, by the decedent's successor in interest.

Cal. Civ. Proc. Code § 377.30.

### B. Plaintiffs Must Exhaust Administrative Remedies.

The law requiring the exhaustion of FEHA's administrative remedies before filing suit is well settled in California. *Rojo v. Kliger*, 52 Cal.3d 65 (1990) (en banc); *see also Rodriguez v. Airborne Express*, 265 F.3d 890 (9th Cir. 2001) (applying California law).

> [E]xhaustion of the FEHA administrative remedy is a precondition to bringing a civil suit *on a statutory cause of action*.  In cases appropriate for administrative resolution, the exhaustion requirement serves the important policy interests embodied in the act of resolving disputes and eliminating unlawful employment practices by conciliation . . . as well as the salutary goals of easing the burden on the court system, maximizing the use of administrative agency expertise and capability to order and monitor corrective measures, and providing a more economical and less formal means of resolving the dispute . . . .

*Rojo*, 52 Cal. 3d at 83 (citations omitted) (emphasis in original).  No controlling authority, however, has yet addressed whether the estate, personal representative, or successor-in-interest to a decedent with a surviving FEHA claim must also exhaust administrative remedies before filing suit.  At least one court dismissed a state statutory claim similar to FEHA when the plaintiff, in her capacity as the personal representative of the decedent, failed to exhaust administrative remedies. *Tafoya v. Bobroff*, 865 F. Supp. 742, 747–48 (D.N.M. 1994).

California Government Code Section 12960 establishes the procedure by which aggrieved employees may file a complaint with DFEH.  Section 12965(b) lays out how they can then obtain a right-to-sue letter:

> If a civil action is not brought by the [DFEH] within 150 days after the filing of a complaint, or if the [DFEH] earlier determines that

4

> no civil action will be brought, the [DFEH] shall promptly notify, in writing, the person claiming to be aggrieved that the [DFEH] shall issue, on his or her request, the right-to-sue notice. This notice shall indicate that the person claiming to be aggrieved may bring civil action under this part against the person, employer, labor organization, or employment agency named in the verified complaint within one year from the date of that notice.

Therefore, "'[i]n order to bring a civil action under FEHA, the aggrieved person must exhaust the administrative remedies provided by law.'" *Airborne Express*, 265 F.3d at 896 (quoting *Yurick v. Superior Court*, 209 Cal. App. 3d 1116, 1121 (1989)). "Exhaustion in this context requires filing a written charge with DFEH within one year of the alleged unlawful employment discrimination, and obtaining notice from DFEH of the right to sue." *Airborne Express*, 265 F.3d at 896 (citations omitted). Thus, the general exhaustion rule requires that employees obtain a right-to-sue letter prior to filing a civil action.

Still, "[t]hese procedural requirements, as with all provisions of FEHA, are to 'be construed liberally for the accomplishment of the purposes [of FEHA].'" *Id.* at 897 (quoting Cal. Gov't Code § 12993(a)). "The administrative time limits prescribed by FEHA are treated as equivalent to statutes of limitations and are subject to equitable doctrines such as waiver, estoppel, and tolling." *Airborne Express*, 265 F.3d at 900 (citations omitted). One such example is the "*Denney* exception," which may excuse non-exhaustion if it "can be attributed to the administrative agency (generally the DFEH) charged with processing his complaint." *Id.* at 900-01 (citing *Denney v. Universal City Studios, Inc.*, 10 Cal. App. 4th 1226, 1232-34 (1992) (abrogated on other grounds)). That exception aided the plaintiff in *Airborne Express*, who having originally filed a race discrimination charge with the DFEH, later made an untimely amendment to include disability discrimination. 265 F.3d at 897-98. Because the plaintiff's affidavit created a triable issue of fact as to whether the DFEH misled him about his disability discrimination claim, the Ninth Circuit reversed summary judgment and remanded. *Id.* at 902.

Plaintiffs here are not so fortunate. Their only argument regarding exhaustion is that the law could not possibly demand that an employee allegedly killed by her employers file a claim with the DFEH post-mortem. As to the decedent, of course this seems true. But the law demands that her *personal representatives* file a claim on her behalf. Assuming that Ms.

5

Hung's untimely death on October 21, 2010, was the last day she suffered the alleged FEHA violations, then her FEHA claims survived for her successors-in-interest *subject to the applicable limitations period*. Cal. Civ. Proc. Code § 377.20(a). This means plaintiffs, as their daughter's successors-in-interest, effectively stepped into their daughter's shoes and were required to file a claim with the DFEH by October 21, 2011. Cal. Gov't Code § 12960(d).

Plaintiffs have not alleged that they filed any such claim with the DFEH or obtained a right-to-sue letter. On the contrary, they seem to assume that given the allegations, they did not need to. While defendants do not identify any statute or decision affirmatively requiring the estate, personal representative, or successor-in-interest of an aggrieved decedent to exhaust administrative remedies, the converse also holds true: plaintiffs cannot point to any statute or decision affirmatively *excusing* them from such requirement. Plaintiffs fail to recognize that California's survivorship statute, which presumably provides their right to Ms. Hung's FEHA claims, requires that they exhaust administrative remedies prior to filing suit, just like any other FEHA plaintiff. *See Airborne Express*, 265 F.3d at 896. Unless a qualifying equitable doctrine applies, plaintiffs' failure to exhaust administrative remedies bars their FEHA-related claims. Plaintiffs have not alleged any valid excuse for failing to exhaust.

To the extent stated above, defendants' motions to dismiss the first, second, and fourth claims are **GRANTED**.

### 3. PLAINTIFFS' BREACH OF CONTRACT CLAIM MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM.

Defendants also contend that because plaintiffs failed to adequately plead any legally cognizable breach of contract, their third claim must be dismissed. This order agrees. Plaintiffs alleged that defendants breached Ms. Hung's employment contract by murdering her (Compl. ¶ 49). This order need not address whether such a claim survives the decedent because plaintiffs failed to sufficiently plead their claim, as now explained.

#### A. Plaintiffs Insufficiently Pleaded Their Breach-of-Contract Claim.

It is unclear from the complaint whether plaintiffs pleaded their breach-of-contract claim in their individual capacities or on Ms. Hung's behalf. Either way, their claim fails here.

6

*First*, plaintiffs have not alleged that they were parties to the contract, or how they otherwise have standing to claim individual harms for the alleged breach of contract. Nor have plaintiffs pleaded what express provision or implied covenant defendants allegedly breached.

*Second*, assuming plaintiffs meant to allege a survivor claim for the breach, they failed to plead with sufficient specificity *how* defendants allegedly breached the contract. Plaintiffs alleged an at-will "written employment agreement" and that Ms. Hung satisfactorily performed her end of the agreement up until her death (Compl. ¶¶ 49–50). They also alleged that "Cindy did not by any means agree to being murdered by her co-workers," but they did not allege any breach of an express provision of the agreement (*id.* at ¶ 49).

On the contrary, plaintiffs seem to acknowledge that no breach of an express contractual provision occurred. Plaintiffs alleged that "[d]efendant-employer terminated the contract by fostering an [sic] hostile working environment, condoning the murder by defendants' employees and cover-up [sic] the crime by obstructing the investigation. These covenants are not expressly written into a contract because these are implied covenants" (Opp., Dkt. No. 41, at 4–5). Yet plaintiffs failed to allege what legally cognizable implied covenant defendants allegedly breached. If any such claim were ever to be recognized, surely it would have to be pled with specificity under FRCP Rule 9(b).

Plaintiffs argue that public policy considerations should allow claims like theirs to proceed. Otherwise, employers could "murder with impunity" and employees would have to "contemplate murder by the employer as a way of terminating . . . employment . . . ." (Opp., Dkt. No. 41, at 5). Murder must be condemned, to be sure, but this does not save the novel civil claim now advanced. There already exist many criminal and civil remedies for murder, including for an employer's murder of an employee, some of which plaintiffs unsuccessfully pursued in the prior action. This order cannot find any authority that treats an alleged murder as a breach of an at-will employment contract or any employment contract for that matter. In fact, "death or permanent disability of one employed for services of a personal nature terminates the contract . . . ." *Rench v. Watsonville Meat Co.,* 292 P.2d 85, 89 (Cal Ct. App. 1956).

To the extent stated above, defendants' motions to dismiss the third claim are **GRANTED**.

7

### 4.   PLAINTIFFS IMPROPERLY PLEAD SUBJECT-MATTER JURISDICTION

While plaintiffs allege claims in both their individual capacities and as successors-in-interest, their counsel again fails to assert diversity jurisdiction properly. As the order dismissing the related case reminded counsel, complete diversity is required, 28 U.S.C. 1332(a), the burden of establishing diversity jurisdiction falls on the party asserting it, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), and it must be affirmatively alleged. *Bautista v. Pan Am. World Airlines*, 828 F.2d 546, 552 (9th Cir. 1987).

For the individual claims: plaintiffs allege that they are Taiwanese citizens, but if they are also permanent residents, the state they are domiciled in becomes their state for diversity purposes. *See* 28 U.S.C. 1332(a)(2). Plaintiffs also allege that at least one of the defendants is a corporation with its principal place of business in California (Compl. ¶ 6). This makes the corporation a citizen of California for diversity purposes. 28 U.S.C. 1332(c)(1). Therefore, plaintiffs must affirmatively allege (if true) that they: either are not permanent residents or that they are permanent residents but were not domiciled in the same state as any of the defendants when this claim was filed.

For the claims as successors-in-interest: plaintiffs' counsel has "vagued out" Ms. Hung's citizenship. As successors-in-interest, plaintiffs adopt their decedent daughter's citizenship. *See* 28 U.S.C. 1332(c)(2). The complaint, however, is silent on Ms. Hung's citizenship, while the attached death certificate indicates she was born in Taiwan (Plaintiffs' Exh. 2) and one of plaintiffs' opposition briefs state Ms. Hung was a citizen of Canada (Opp., Dkt. No. 40, at 7). Furthermore, it is highly possible that Ms. Hung was a permanent resident of California; she owned property in California (Plaintiffs' Exh. 1) and her employment in California presumably gave rise to the current action. Therefore, plaintiffs must not only allege Ms. Hung's citizenship in their complaint, but they must also allege (if true) that Ms. Hung: either was not a permanent USA resident or that Ms. Hung was a permanent USA resident but was not domiciled in the same state as any of the defendants when this claim was filed.

Plaintiffs must affirmatively allege (if true) all the particulars establishing complete diversity jurisdiction in any amended complaint they file.

8

**CONCLUSION**

Therefore, to the extent stated above, defendants' motions to dismiss are **GRANTED**. Again, the district judge states, as he did in the previous action, that he is sympathetic to the family on their loss of Cindy Hung. When he went through the first action, the judge gave as much guidance as possible but counsel pursued a different course. This second federal action is deficient. Plaintiffs may motion to seek leave to file an amended complaint by February 15, 2013. The proposed amended complaint must affirmatively allege (if true) every particular necessary for complete diversity jurisdiction and must also address with specificity and in non-conclusory terms three matters: *first*, if and how plaintiffs exhausted their administrative remedies within the prescribed time period under FEHA; *second*, if and how any equitable doctrine excusing a failure to exhaust may apply to plaintiffs; and *third*, what express provisions or implied covenants defendants allegedly breached.

**IT IS SO ORDERED.**

Dated: January 25, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

9